IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: TROPHY PLEX PROPERTIES, LTD, | § | CASE NO. 10-70688-M-11 |
| | § | |
| Debtor. | § | CHAPTER 11 |
| TROPHY PLEX PROPERTIES, LTD., | § | |
| | § | Adv. Proceeding No. 10-07030 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| FIRST NATIONAL BANK OF EDINBURG, | § | |
| A TEXAS CORPORATION, | § | Removed from the 206th District |
| | § | Court, Hidalgo County, Texas |
| Defendant. | § | Cause No. C-3640-09-D |

## DEFENDANT FIRST NATIONAL BANK'S
## MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

FIRST NATIONAL BANK ("FNB"), moves for Summary Judgment on the claims

asserted against FNB by Plaintiff Trophy Plex Properties, LTD, ("Trophy Plex"), and

respectfully shows the following:

### I. The Summary Judgment Evidence

1.     At a hearing held June 20, 2011, the Parties offered consolidated exhibits,

which the Court accepted for purposes of evidence on the merits, motions and responses to

motions for summary judgment made by either party.  Those exhibits are summarized as

follows and incorporated by reference:

| Def.'s Exhibit No. | Description |
|---|---|
| 5[1] | May 28, 2007 Promissory Note |
| 6 | May 28, 2007 Notice of Final Agreement |
| 7 | May 28, 2007 Deed of Trust |
| 9 | November 28, 2007 Modification and Extension Agreement |
| 10[2] | April 3, 2008 (signed May 30, 2008) Modification and Extension Agreement |
| 11[3] | July 29, 2008 Notice Intent to Accelerate Indebtedness, August 12, 2008 Notice of Acceleration and Notice of Trustee's Sale |
| 12 | August 12, 2008 Notice of Trustee's Sale |
| 13 | September 2, 2008 Trustee's Deed |
| 14 | December 1, 2009, Foreclosure Sale Deed |
| 16 | Spreadsheet Summarizing Calculation of Amounts Owed |

---

[1] Because this is an adjudication of potentially (depending upon the ruling on this motion) only a portion of the entire case, and for purposes of brevity, only the Exhibits relevant to the bifurcated issues were included. To avoid conflicting Exhibit numbers, and to maintain the chronological ordering of Defendant's Exhibits, the excerpted documents will retain their chronological numbering and order, resulting in the Exhibits for this current matter starting with Exhibit No. 5 and perhaps skipping some Exhibits that are not relevant to this proceeding. That way, should the Court need to proceed further with additional evidence and issues to be decided if this motion is denied, as part of the potentially remaining issues the Exhibits will be complete, with a consistent and orderly numbering.

[2] This exhibit was substituted at the hearing with another (having more pages) by agreement of the parties and with the permission of the Court. The effective exhibit was not included on the CD presented by Defendant with its Exhibits and the Court has only a "paper copy."

[3] This exhibit was substituted at the hearing with another (having more pages) by agreement of the parties and with the permission of the Court. The effective exhibit was not included on the CD presented by Defendant with its Exhibits and the Court has only a "paper copy."

17                    Loan History Summary

20                    Plaintiff's Response to Requests For Admission Nos. 1-12 to
                      Discovery Requests from First National Bank to Plaintiff.

2.      In addition, the Parties entered into Fact Stipulations announced on the record

and subsequently reduced to writing and filed with the Clerk in the case.  A copy of these

Stipulations is attached as Exhibit "A," and they are incorporated by reference.

3.      FNB further submits as summary judgment evidence, and asks the Court to

take judicial notice of, all pleadings, orders, motions, docket entries, and other filings of

record in this action.

## II. **Background**

4.      In 2004 and 2005, Trophy Plex executed two promissory notes secured by

deeds of trust on various tracts of land in Starr County, Texas.  In 2007, FNB and Trophy

Plex consolidated these notes into a third promissory note in the amount of $6,647,095.43

payable to FNB.[4] This consolidated note was also secured by a deed of trust on various tracts

in Starr County.[5]

5.      Trophy Plex subsequently defaulted on payment of the consolidated promissory

note,[6] and FNB nonjudicially foreclosed on several tracts of the collateral land on September

---

[4] See Exhibit 5.

[5] See Exhibit 7.

[6] See Stipulation No. 2.

FNB (First) Motion For Summary Judgment                              Page 3 of 22

2, 2008.[7]  A deficiency of $891,310.49 remained after application of the foreclosure sale proceeds.[8]  On December 1, 2009, FNB nonjudicially foreclosed on an additional two tracts of land that were subject to the deeds of trust executed by Trophy Plex.[9]  After application of these proceeds, the amount owed was $838,524.70.[10]

6.     Trophy Plex filed this lawsuit against FNB and claimed that the second foreclosure should not have occurred and was, therefore, wrongful because no deficiency existed under the note after the first nonjudicial foreclosure sale.   Plaintiff seeks compensatory damages from FNB of $10,000,000.00. *See Plaintiff's First Amended Petition at subparagraph (a) of the Prayer.*[11]  Currently, FNB has no counterclaims or third party claims against Trophy Plex.[12]

7.     The Court defined the initial factual issue as follows:

"... *whether there was a loan deficiency following the first foreclosure ... .*"[13]

The parties and the Court originally believed there was a factual issue on the amount owed

---

[7]  See Stipulation No. 3 and Exhibit 13.

[8]  See Stipulation No. 4.

[9]  See Stipulation No. 6 and Exhibit 14.

[10]  See Stipulation No. 7.

[11]  See "Plaintiff's and Counter Defendant's First Amended Original Petition" filed on or about December 21, 2010 and included as subpart 13 of Exhibit "B" to FNB's Notice of Removal of this action.

[12]  FNB dismissed its counterclaims and third party claims.  See Docket No. 12 in this Adversary Proceeding; the Order Dismissing FNB's counterclaims and third party claims.

[13]  See Order under Docket No. 14 in this Adversary Proceeding.

by Trophy Plex to FNB on the note as of the first foreclosure date.  At the June 20, 2011, hearing, however, the parties stipulated that: (i) Trophy Plex owed FNB $6,891,310.49 under the note as of the first foreclosure date; (ii) the winning bid at the first foreclosure sale was $6,000,000.00; and (iii) the difference between the amount owed under the note and the winning bid was $891,310.49.[14]   Additionally, the parties stipulated that there were no procedural irregularities in the foreclosure sale process for either the first or second foreclosure sales.[15]   At the hearing, Trophy Plex argued that, although the amount owed under the note exceeded the amount of the winning bid at the first foreclosure, state law precluded FNB from conducting the second foreclosure sale because the value of the properties sold at the first foreclosure sale exceeded the amount owed by Trophy Plex to FNB under the note.[16]

    8.  FNB asserts that (i) there is no genuine issue of material fact that it complied with all contractual and statutory requirements for conducting the foreclosure sales, and (ii) Tex. Prop. Code § 51.003 does not and cannot provide Trophy Plex with an affirmative cause of action against FNB. Consequently, FNB requests that it be granted Summary Judgment denying all of Trophy Plex's claims against it.

---

[14]  See Stipulation No. 4.

[15]  See Stipulation No. 8.

[16]   Trophy Plex's First Amended Complaint alleges that FNB breached its contract, defrauded Plaintiff, breached implied covenant(s) of good faith and fair dealing, intentionally misrepresented facts, and wrongfully foreclosed in the second foreclosure "because a prior foreclosure on other parcels of property was sufficient to pay the outstanding balance on the notes in question."  Trophy Plex pleaded no statutory claims or offsets; only affirmative claims in tort and contract.

### III.  Argument

### No Cause of Action under Case Law

9.      Under Texas law, the amount owed to a creditor as a deficiency is conclusively

established by reference to the foreclosure sale price (absent some irregularity in the sale

contributing to a grossly inadequate price) even if that price is established by the amount the

lender itself successfully bid for the property, regardless of what the market price might be.

*American Sav. & Loan Ass'n. v. Musick,* 531 S.W.2d 581, 587 (Tex.1976); *Sparkman v.*

*McWhirter*, 263 S.W.2d 832, 837 (Tex. 1953)*; Sheppard v. Citizens Nat. Bank,* 567 S.W.2d

613, 615 (Tex.Civ.App.-Austin 1978, writ ref'd n.r.e.);  *In re Home and Hearth Plano*

*Parkway, L.P.*, 320 B.R. 527, 606 (Bankr. N.D. Tex. 2007) (and other cases cited therein,

including *Provident National Assurance Company v. Stephens*, 910 S.W.2d  926 (Tex.

1995)); *In re Greenhaw Energy, Inc.,* 03-30422, 2007 WL 1953491 (Bankr. S.D. Tex. July

3, 2007); *In re Saunders*, 112 B.R. 844, 845 (Bankr. W.D. Tex. 1990) (Clark).

10.     The Fifth Circuit has recognized this long standing rule in Texas.  In *Savers*

*Federal Savings & Loan v. Reetz,* 888 F.2d 1497, 1507 (5th Cir.1989), the Fifth Circuit

explained:

> The foreclosure sales price, rather than the then market price, constituted the
> proper amount to credit on the debt for deficiency judgment purposes, again
> even though the creditor was the purchaser at foreclosure.
>
>       *                    *                    *
>
> The decisions of the Texas Supreme Court in Tarrant Savings Ass'n, Maupin,
> and Musick are decisive against appellants' claim that summary judgment
> should have been denied because of their tendered defense that the foreclosure
> sales price was only half the then market value of the property and that the

property's then market value exceeded the amount of the outstanding debt.

*Savers* at 1507-1508.[17] [18]

11.    In this case, the record and the parties' stipulations establish there were no irregularities in the foreclosure process in either the first or second foreclosure sales.[19]

12.    Thus, no material fact supports an argument that the second foreclosure sale was wrongful under Texas law because the price received at, and credit given for, the first foreclosure sale was "inadequate."

### No Cause of Action under Texas Property Code § 51.003

13.    At the June 20, 2011 hearing, but not in its pleadings, Trophy Plex advanced the argument that Tex. Prop. Code § 51.003 precluded FNB from conducting the second foreclosure sale.  Under Trophy Plex' theory, section 51.003 would bar FNB from collecting a deficiency, and because no deficiency would exist under the statute, the second foreclosure should not have taken place.

14.    FNB asserts that Tex. Prop. Code § 51.003 cannot apply under the undisputed

---

[17] The Texas Legislature, in 1991, <u>after</u> the *Savers* decision, enacted Texas Property Code §51.003, which provides a statutory exception for deficiency <u>judgment</u> purposes.  It did not change the laws as to the credit to be applied to the debt otherwise.

[18] *Tarrant Savings Ass'n, Maupin,* and *Musick* all held that even a <u>gross</u> inadequacy of price (absent some irregularity in the sale process which contributed to the inadequate price) would not justify setting aside a real estate deed of trust foreclosure, <u>even though the creditor was the purchaser.</u>  If the sale had no irregularities, the foreclosure sales price, rather than the then market price, constituted the proper amount to credit on the debt.

[19] See Exhibits 11-14, 20, and Stipulation No. 8.

facts of this case to provide Trophy Plex with the relief it seeks.

15.     Section 51.003 of the Texas Property Code provides as follows:

(a) If the price at which real property is sold at a foreclosure sale under Section 51.002 is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any *action* brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this section.

(b) *Any **person against whom** such a recovery is sought* by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale. The fair market value shall be determined by the finder of fact after the introduction by the parties of competent evidence of the value. Competent evidence of value may include, but is not limited to, the following: (1) expert opinion testimony; (2) comparable sales; (3) anticipated marketing time and holding costs; (4) cost of sale; and (5) the necessity and amount of any discount to be applied to the future sales price or the cashflow generated by the property to arrive at a current fair market value.

(c) If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, *the **persons** against whom recovery of the deficiency is sought* are entitled to an ***offset** against the deficiency* in the amount by which the fair market value, less the amount of any claim, indebtedness, or obligation of any kind that is secured by a lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sale price. *If no party requests the determination of fair market value or if such a request is made and no competent evidence of fair market value is introduced, the sale price at the foreclosure sale shall be used to compute the deficiency.*

            *                        *                                    *

Texas Property Code § 51.003 (emphasis supplied).

16.     In interpreting a state statute, federal courts apply the statutory analysis that a

Texas state court would apply. *McNeil v. Time Insurance Co.*, 205 F3d. 179, 183 (5th Cir.

2000). In *Union Bankers Insurance Co. v. Shelton*, 889 S.W.2d 278 (Tex. 1994), the Texas

Supreme Court instructed:

> The primary rule in statutory interpretation is that a court must look to the intent of the legislature and must construe the statute so as to give effect to that intent. *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993); *Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382, 384 (Tex.1982). When determining legislative intent, the courts may look to the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternate constructions. *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex.1991) (considering the nature and object of the act and the consequences of alternate constructions); *Irving Fireman's Relief & Retirement Fund v. Sears*, 803 S.W.2d 747, 750 (Tex.App.Dallas 1990, no writ) (considering the language of the statute and the legislative history).

*Id.* at 280.

**a.**   **Language of the Statute**:   **A Non-Judicial Foreclosure Is Not An "Action" To Recover a Deficiency**

17.     The language of the statute applies only to "any action brought [by the creditor] to recover the deficiency."[20]   In this case, FNB has no pending "action" "to recover any deficiency."[21]

18.     The term "action" as used in the statute contemplates a suit or judicial

---

[20] There is authority that even a lawsuit for a deficiency judgment against a <u>guarantor</u> is not an "action brought to recover the deficiency" under the Texas deficiency statute:

> As the Court is not aware of any case law tending to indicate that a claim against a guarantor such as Perry is a deficiency action that is potentially subject to setoff under the Texas Property Code, the Court estimates a 0% probability of reaching a different result in a full trial on the merits.

*In re Perry*, 425 B.R. 323, 381 (Bankr. S.D. Tex. 2010). There is authority that the statute would apply to actions for deficiency brought against a guarantory. *Long v. NCNB-Texas Nat'l Bank*, 882 S.W.2d 861, 865 (Tex.App.--Corpus Christi 1994, no writ). The language of § 51.003 applies to "[a]ny person."

[21]   *See* the lack of any such claim from the pleadings of record, incorporated herein by reference.

proceeding.  1 Tex. Jur 3d, *Actions*, §§ 3 and 4 (database updated March 2011); Black's Law

Dictionary (9th ed. 2009), *Action*, def'n. no. 4.

19.     According to the Texas Supreme Court:

> The term "action" is generally synonymous with "suit," which is a demand of
> one's rights in court. See *Bradley v. Etessam*, 703 S.W.2d 237, 241
> (Tex.App.-Dallas 1985, writ ref'd n.r.e.). This Court has likewise equated
> "action" with "suit." *See United Production Corp. v. Hughes*, 137 Tex. 21, 152
> S.W.2d 327, 330 (1941) ("To constitute the proceeding 'a suit' or 'action,' in
> any legal sense, it is essential that it rest in a court, with the power to hear it.").

*Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex. 1995); *see also Ray & Associates, P.C. vs.*

*SMS Financial II, L.L.C.*, 202 WL 997663 (Tex. App. – San Antonio 2002, not designated

for publication).  The statute, by its own language and clearly understood use of its language,

does not apply to any situation in which the creditor is not seeking a deficiency judgment in

a court action.

**b.     The Language of the Statute: The Statute Protects "Persons," Not Property**

20.     Furthermore, subsections (b) and (c) of section 51.003 clearly indicates the

statute's design and intent to protect a "person" in a lawsuit to recover a deficiency.[22]

Subsection (b) begins, "(b) Any ***person*** against whom such a recovery is sought . . . "  Tex.

Prop. Code § 51.003 (b) (emphasis added), and subsection (c) states, "(c) If the court

determines that the fair market value is greater than the sale price of the real property at the

foreclosure sale, the ***persons*** against whom recovery of the deficiency is sought . . . ."  Tex.

Prop. Code § 51.003 (c) (emphasis added).  The statute focuses on actions against a "person"

---

[22]   FNB does not argue that Trophy Plex is not a "person" under the statute.

and provides "persons" with protection under the circumstances and procedures outlined. Pointedly, the statute is devoid of language that would indicate a legislative intent to extend the statute's reach to protect additional pledged "property" from subsequent non-judicial foreclosures of liens.

21.     The Texas Legislature has demonstrated it understands the distinction between protecting a "person" as FNB contends is the purpose of section 51.003 and providing relief to property.  Sections 52.021 - 52.025 and 52.041 - 51.043 of the Texas Property Code, for example, outline procedures that debtors may use to discharge and cancel judgment liens evidencing a debt or obligation discharged in a bankruptcy case.  Another example of the legislature's ability to distiguish between protecting a person and protecting a person's property is Texas' statutory exemption scheme (Tex. Prop. Code §§ 41.001 - 41.024; 42.001 - 42.005).  Generally, the exemption statutes effectively prevent enforcement of liens against exempt property, but do not prohibit a party from obtaining a money judgment.  If the Texas legislature wanted to protect "property" as well as "persons" under Texas' deficiency statute as asserted by Trophy Plex, it could have easily and explicitly done so, as it has in other statutes.

22.     In *LaSalle Bank National Association v. Sleutel*, 289 F3d 837 (5th Cir. 2002), the Fifth Circuit examined whether a guarantor could contractually waive his rights under the statute here under consideration, Tex. Prop. Code §51.003.  The statute is silent on the issue. The court noted that other sections of the Texas Property Code address the waiver issue and

specifically prohibit waiver.  The court noted, "Under the principle of *inclusio unius est exclusio alterius,* we consider this as evidence that the Texas Legislature knows how to preclude waiver of statutory provisions when it so desires, and the fact that it did not do so in this case indicates that it intended to allow this provision to be waived." *Id.* at 841.

23.    Because Texas statutes contain laws protecting properties in specified situations from enforcement of liens, we must assume the Texas Legislature could have also done so in section 51.003.  But it did not.  FNB urges this Court to adhere to the *LaSalle Bank* rule and reject Trophy Plex' argument that would extend its protection beyond the statute's plain wording.

**c.    The Language of the Statute:  The Statute Provides a Defensive Offset Only**

24.    FNB maintains a person may invoke section 51.003 only to provide an offset in defense of a suit to collect a deficiency.  Subsection (c) to the statute provides in part, "(c) If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons *against whom recovery of the deficiency is sought* are entitled to an *offset against the deficiency*" in an amount as determined under the statute.  Tex. Prop. Code § 51.003 (c) (emphasis added).

25.    As indicated previously, FNB does not seek recovery of a deficiency judgment from Trophy Plex.  FNB is not requesting affirmative relief in this lawsuit.  FNB assets that Trophy Plex is not a person "against whom recovery of the deficiency is sought" in the second foreclosure and, consequently, does not qualify as a litigant entitled to invoke the

protection of section 51.003. *See In re Perry,* 425 B.R. 323, 380 (Bankr. S.D. Tex. 2010) (section 51.003 not applicable where no deficiency judgment sought).

26.    Additionally, FNB maintains that, if it asserted a deficiency action against Trophy Plex, the statute's express wording allows only an offset "against the deficiency," and not affirmative relief for amounts exceeding the deficiency. To permit Trophy Plex affirmative relief in an amount greater than the deficiency would exceed the language of the statute and create an affirmative cause of action for mortgagors not provided in the statute.

27.    The Legislature could have worded the statute to simply provide that in the event the "actual value" equals to or exceeds the debt, then "the debt is paid." Instead, the Legislature limited the statute to providing only an offset against a deficiency action.

### d.    <u>Nature and Object To Be Obtained</u>: Legislative History.

28.    The legislative history is limited to the 1991 proposed statute's analysis by the House Research Organization[23] which summarized the bill:

> *[It] ... would revise the Texas Property Code to allow a judge or jury to limit the size of a deficiency judgment ... . If a lender brought suit to recover a deficiency, the person sued could ask ... to determine the property's fair market value as of the date of the foreclosure sale.*

House Committee on Financial Institutions, Bill Analysis, Tex. H.B. 169, 72d Leg., R.S.

---

[23] The House Research Organization (HRO) is a nonpartisan independent department of the Texas House of Representatives. It provides impartial information on legislation and issues before the Texas Legislature. HRO publications are not an official part of the legislative process nor an official expression of the views of the Texas House of Representatives. For more information on the HRO, see www.hro.house.state.tx.us/home.aspx.

(1991).  The Committee summarized the bill's proponents as arguing:

> *Changing the law would not clog the courts since the bill provides for judges or juries to determine the fair market value only when a lender sues to collect a deficiency judgment, rather than calling for such a determination* <u>*before*</u> *a foreclosure sale.*

Bill Analysis, *supra.*

29.    Nothing in the legislative history indicates any intention to apply the protections of the statute to any situation other than "when a lender sues to collect a deficiency judgment."  The statute does not apply in this situation where the lender only foreclosed on its collateral and does not seek a deficiency judgment.  The legislative history explicitly states the intention to limit the application of the statute only to provide an offset (not an affirmative claim) and only against a deficiency judgment.


e.    <u>**Consequences from Alternative Constructions:**</u>

30.    Interpreting the statute to create an affirmative cause of action for mortgagors would cause a cascade of mortgagor lawsuits alleging the mortgagee had foreclosed on the pledged propertiy for a bid amount less than the fair market value, and that the foreclosed property's fair market value allegedly exceeded the balance of the secured loan.  Every real property foreclosure would invite the resulting "fair market value" cause of action <u>even though the lender seeks no deficiency judgment.</u>

31.    Foreclosing on additional property to discharge the remaining amounts owed on a debt, such as FNB did in this case when the amounts recovered in the first foreclosure

sale were insufficient to pay the debt, is not an "action brought to recover the deficiency"; it only continues the *non-judicial* foreclosure of the security interest in the collateral. Considering a second foreclosure sale "an action brought to recover the deficiency" owed after the first foreclosure sale would in practicality require all collateral securing a debt to be foreclosed upon at once, rather than by separate sales, held at successive dates.  Such a result would harm a cautious lender incrementally foreclosing on collateral hoping to realize proceeds sufficient to cover the debt before foreclosing on <u>all</u> the pledged property. In a case such as in the present case, had the first foreclosure sale generated the amount owed, foreclosure on the additional collateral would not have even been necessary.  Additionally, the result of retroactive challenges to foreclosures would prevent prompt and effective resolution of debt obligations by foreclosure on the collateral, and would provide a borrower affirmative causes of action from a statute that reads, and was intended, to only provide a defensive offset in response to a lender's affirmative judicial claims for a deficiency judgment.

**f.**    <u>**No Cause of Action Created Under the Statute.**</u>

32.    Federal courts should avoid creating new causes of action for litigants, particularly when those causes of action arise under state law.

> "Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 365, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (SCALIA, J., concurring in part and concurring in judgment).

*Alexander v. Sandoval*, 532 U.S. 275, 287, 121 S.Ct. 1511, 1520, 149 L.Ed. 2d 517 (2001). Also,

> If monetary liability to a private plaintiff is to be found, it must be read into the Act. Yet it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Botany Mills v. United States*, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379. [other citations omitted.]

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19-20, 100 S. Ct. 242, 247, 62 L. Ed. 2d 146 (1979) (discussing created claims from a federal statute).

33.     The language of the statute (which is not confusing or ambiguous), its legislative history, the nature and object to be obtained from the statute, and the consequences that would follow from Plaintiff's proposed "interpretation" of the statute, militate against the interpretation argued by Trophy Plex, and this Court should reject Plaintiff's attempt to expand on the plain wording, meaning, intention, and effect of the statute.

**g.  Procedural Requirements to Invoke Section 51.003**

34.     Should the Court place such an interpretation on the statute, Plaintiff has not complied with the procedures necessary to invoke the protections of the statute.  Subsection (a) of Tex. Prop. Code § 51.003 requires "Any person against whom [a deficiency judgment] is sought may request that the court in which the action is pending determine the fair market

value of the real property as of the date of the foreclosure sale." The statute, thus requires by pleading or motion that the fair market value issue be raised for a determination. Trophy Plex has failed to do so in this case.[24] Similarly, in *Mays v. Bank One, N.A.,* 150 S.W.3d 897 (Tex. App.–Dallas 2004, no pet.), the court determined that Tex. Prop. Code § 51.005 (which is a deficiency statute similar to Tex. Prop. Code § 51.003, but applies to guarantors of debts secured by foreclosed real property) provided a right of an offset, which was an affirmative defense that must be specifically pled. Failure to plead the defense precluded the guarantor's ability to avail himself of the defense provided in section 51.005. *Id.* at 898-99.

## IV. <u>Conclusion</u>

35.     FNB contends Trophy Plex cannot recover under the summary judgment evidence. First, no evidence supports any allegation that there were irregularities in the foreclosure sales (and, in fact, Trophy Plex' pleadings do not even plead any irregularities in the foreclosure process). Without evidence of such irregularities, longstanding Texas law provides that the amount owed to a creditor as a deficiency after a real estate foreclosure is conclusively established by reference to the foreclosure sale price. Here, that lawful calculation resulted in a deficiency authorizing and justifying the subsequent foreclosure on the additional property securing the debt. Trophy Plex cannot, moreover, prevail on the basis of Tex. Prop. Code § 51.003. The prerequisite for invoking section 51.003–an "action to

---

[24] See "Plaintiff's and Counter Defendant's First Amended Original Petition" included as subpart 13 of Exhibit "B" to FNB's Notice of Removal of this action.

recover a deficiency"–is missing in this case.  The second foreclosure that occurred in this case cannot qualify as the required "action."  Additionally, the statute applies in favor of "persons" against whom a deficiency is sought and should not be read to protect property as argued by Trophy Plex.  If the Texas legislature wanted the statute's protection to extend to other pledged property, it could easily have done so.  Section 51.003 provides only an affirmative defense to a deficiency action, not an affirmative remedy as advanced by Trophy Plex, and even that defense requires the "person against whom recovery is sought" to follow the statute's requirements, which Trophy Plex' has not done.  The consequences of some other, alternative, construction of the statute would radically change the law of Texas real property foreclosures, and is not something to be undertaken lightly by federal courts.  Finally, even if such a cause of action was created by, or deemed to be implied in the statute, Trophy Plex has not complied with the procedural prerequisites necessary to invoke the statute's operation.  For these reasons, FNB prays that this Court grant it Summary Judgment denying Plaintiff's claims against FNB.

Respectfully submitted and dated this 5th day of August, 2011.

_/S/ Mark W. Walker_____
Mark W. Walker
State Bar No. 20717350
S.D. Tex Admission No. 2270

OF COUNSEL:
WALKER & TWENHAFEL, L.L.P.

Mark A. Twenhafel
State Bar No. 20350600
S.D. Tex. Admission No. 2268

Christopher A. Funk
State Bar No. 24007212
S.D. Tex Admission No. 33804

P. O. Drawer 3766
McAllen, Texas 78502-3766
Telephone:  (956) 687-6225 ext. 203/202
Fax:  (956) 686-1276
E-mail: markt@rgvlawyers.com
        mwalker@rgvlawyers.com
        cfunk@rgvlawyers.com

Attorneys for First National Bank

Attachments:
    Exhibit "A" – Copy of Stipulations
    Exhibit "B" – Courtesy Copy of House Research Organization Bill Analysis

## CERTIFICATE OF SERVICE

I, MARK W. WALKER, hereby certify that I am, and at all times hereinafter mentioned, was more than eighteen (18) years of age, and that on the 5th day of August, 2011, a true and correct copy of the foregoing was served electronically or, to those not served electronically, by the methods indicated below, to Debtor's/Plaintiff's counsel as follows:

    Mr. Frank Rodriguez
    Rodriguez & Tovar, L.L.P.
    1111 West Nolana
    McAllen, Texas 78504
    *Via hand delivery*

                              /S/ Mark W. Walker
                              Mark W. Walker

# AUTHORITIES

## Federal Cases

*Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed. 2d 517 (2001).

*Botany Mills v. United States*, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379 (1929).

*Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed. 2d 146 (1979).

*LaSalle Bank Nat. Ass'n v. Sleutel*, 289 F.3d 837 (5th Cir. 2002).

*McNeil v. Time Insurance Co.*, 205 F3d. 179, 183 (5th Cir. 2000).

*Savers Federal Savings. & Loan v. Reetz,* 888 F.2d 1497 (5th Cir.1989).

*In re Greenhaw Energy, Inc.*, 03-30422, 2007 WL 1953491 (Bankr. S.D. Tex. July 3, 2007) (Isgur).

*In re Home and Hearth Plano Parkway,* L.P.,320 B.R. 527 (Bankr. N.D. Tex. June 19, 2007).

*In re Perry*, 425 B.R. 323 (Bankr. S.D. Tex. 2010).

*In re Saunders*, 112 B.R. 844 (Bankr. W.D. Tex. 1990) (Clark).

## Texas Cases

*American Savings. & Loan Association. v. Musick,* 531 S.W.2d 581 (Tex.1975).

*Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382, 384 (Tex.1982).

*Maupin v. Chaney*, 139 Tex. 426, 163 S.W.2d 380 (Tex. 1942).

*Provident National Assurance Company v Stephens*, 910 S.W.2d 926 (Tex. 1995).

*Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex.1991).

*Sparkman v. McWhirter*, 263 S.W.2d 832 (Tex. 1953).

*Tarrant Savings Association v. Lucky Homes, Inc.*, 390 S.W.2d, 473 (Tex. 1965).

*Thomas v. Oldham*, 895 S.W.2d 352 (Tex. 1995).

*Union Bankers Insurance Co. v. Shelton*, 889 S.W.2d 278 (Tex. 1994).

*United Production Corp. v. Hughes*, 137 Tex. 21, 152 S.W.2d 327 (1941).


*Bradley v. Etessam*, 703 S.W.2d 237 (Tex. App.-Dallas 1985, writ ref'd n.r.e.).

*Irving Fireman's Relief & Retirement Fund v. Sears*, 803 S.W.2d 747, 750 (Tex. App. Dallas 1990, no writ).

*Mays v. Bank One, N.A.,* 150 S.W.3d 897 (Tex. App.–Dallas 2004, no pet.).

*Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993).

*Ray & Associates, P.C. vs. SMS Financial II, L.L.C.*, 202 WL 997663 (Tex. App. – San Antonio 2002, not designated for publication).

*Sheppard v. Citizens Nat. Bank,* 567 S.W.2d 613 (Tex. Civ. App.-Austin 1978, writ ref'd n.r.e.).

**Statutes**

Texas Property Code Sections 41.001-41.024.

Texas Property Code Sections 42.001-42.005.

Texas Property Code Section 51.002.

Texas Property Code Section 51.003.

Texas Property Code Section 52.021-52.025.

Texas Property Code Sections 52.041-52.043.

**<u>Secondary Sources</u>**

House Committee on Financial Institutions, Bill Analysis, Tex. H.B. 169, 72d Leg., R.S. (1991).

1 Tex. Jur 3d, *Actions*, §§ 3 and 4 (database updated March 2011).

Black's Law Dictionary (9th ed. 2009), *Action*, def'n. no. 4.

G:\Markw\FNBEDINB\Trophy Plex\Adversary\Drafts\MFSJ on Bifurcated Issue, MWW #2.wpd