

ENTERED
12/01/2011

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **TROPHY PLEX PROPERTIES, LTD,** | § | **Case No. 10-70688** |
| Debtor(s). | § | |
| | § | **Chapter 11** |
| | § | |
| **TROPHY PLEX PROPERTIES, LTD,** | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | **Adversary No. 10-07030** |
| | § | |
| **FIRST NATIONAL BANK,** | § | |
| Defendant(s). | § | **Judge Isgur** |

<u>**REPORT AND RECOMMENDATION**</u>

**Introduction**

This Report and Recommendation considers whether § 51.003 of the Texas Property

Code provides a borrower relief if:

- the fair market value of property sold at a non-judicial foreclosure sale exceeded the amount owed to the lender;

- a lender conducts a subsequent non-judicial foreclosure sale against additional collateral to recover the deficiency; and,

- the borrower waits until after the second non-judicial foreclosure sale to bring suit.

The Court holds that § 51.003 does not provide the borrower relief in this situation.

**Background[1]**

In 2004 and 2005, Trophy Plex executed two promissory notes secured by deeds of trust

on various tracts of land in Starr County, Texas.  In 2007, First National Bank ("FNB") and

Trophy Plex consolidated these notes into a consolidated promissory note in the amount of

---

[1] The following is largely taken from First National Bank's "Background" section from its Motion for Summary Judgment.  (ECF Doc. 22 at 3-5).  Trophy Plex adopted these statements.  (ECF Doc. 29 at 1-2).  This section also includes facts from the parties' agreed stipulation of facts.  (ECF Doc. 21).

$6,647,095.43, payable to FNB. This consolidated note was also secured by a deed of trust on various tracts in Starr County.

Trophy Plex subsequently defaulted on payment of the consolidated promissory note, and FNB non-judicially foreclosed on certain tracts of the collateral land on September 2, 2008. FNB submitted the winning bid at the foreclosure sale.  A deficiency of $891,310.49 remained after application of FNB's $6,000,000.00 credit bid.  On December 1, 2009, FNB non-judicially foreclosed on an additional two tracts of land that were subject to the deeds of trust executed by Trophy Plex.

Trophy Plex filed this lawsuit against FNB in Texas state court on December 9, 2009. Trophy Plex claims that the second foreclosure should not have occurred and was, therefore, wrongful because no deficiency existed under the note after the first non-judicial foreclosure sale.[2]  The action was removed to this Court after Trophy Plex filed bankruptcy.  Trophy Plex seeks compensatory damages from FNB of $10,000,00.00.

The parties and the Court originally believed there was a factual issue on the amount owed by Trophy Plex to FNB on the note as of the first foreclosure sale.  At the June 20, 2011, hearing, however, the parties stipulated that: (i) Trophy Plex owed FNB $6,891,310.49 under the note as of the first foreclosure date; (ii) the winning bid at the first foreclosure sale was FNB's $6,000,000.00 credit bid; and (iii) the difference between the amount owed under the note and the winning bid was $891,310.49.   Additionally, the parties stipulated that there were no procedural irregularities in the foreclosure sale process for either the first or second foreclosure sales.  At the hearing, Trophy Plex argued that, although the amount owed under the note

---

[2] The First Amended Original Petition states other causes of action as well.  (ECF Doc. 1-2 at 48-50).  All of these additional causes of action relate to wrongful foreclosure.  If there was no wrongful foreclosure, Trophy Plex's breach of contract, fraud, breach of implied covenant of good faith, and intentional misrepresentation causes of action all fail.

exceeded the amount of the winning bid at the first foreclosure, state law precluded FNB from conducting the second foreclosure sale because the value of the properties sold at the first foreclosure sale exceeded the amount owed by Trophy Plex to FNB under the note.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[3] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may

---

[3] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-

movant cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

### *Stern v. Marshall*

The Supreme Court's recent decision in *Stern v. Marshall* recognized significant limitations on bankruptcy courts' authority.  No. 10-179, 564 U.S. ---, 2011 WL 2472792 (June 23, 2011).  The Bankruptcy Court therefore provides analysis of its authority in this case.

*Stern* concerned a bankruptcy court's authority over a debtor's common-law counterclaim to a proof of claim filed against the estate.  The Supreme Court held that a bankruptcy court may not constitutionally enter a final judgment over a counterclaim that would not necessarily be resolved by the resolution of the proof of claim.  *Id.* at *24.  The counterclaim did not constitute a "public rights" dispute.  *Id.* at *21.  Although public rights disputes may be decided by non-Article III tribunals, public rights disputes must involve rights "integrally related to a particular federal government action."  *Id.* at *17-18.  Entering a final judgment with respect to the counterclaim would be an impermissible exercise of the judicial power of the United States.  *Id.* at *21.

The broader applicability of the Court's decision remains unclear.  Other types of disputes frequently decided by bankruptcy courts may also require adjudication by an Article III court. *Granfinanciera, S.A. v. Nordberg*, for example, held that the adjudication of a fraudulent transfer claim against a creditor who had not filed a proof of claim did not fall within the public rights exception.  492 U.S. 33, 54-55 (1989).  Following *Stern*, it is unclear whether the adjudication of a fraudulent transfer claim against a creditor who *has* filed a proof of claim falls within the public rights exception.  The Court's authority over matters involving state-law causes of action is particularly questionable.

The Court concludes, however, that it may exercise authority over essential bankruptcy matters under the "public rights" exception.  Under *Thomas v. Union Carbide Agricultural Products Co.*, a right closely integrated into a public regulatory scheme may be resolved by a non-Article III tribunal.  473 U.S. 568, 593 (1985).  The Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts."  *Central Va. Cmty. College v. Katz*, 546 U.S. 356, 363-64 (2006); *see Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) (plurality opinion) (noting in dicta that the restructuring of debtor-creditor relations "may well be a 'public right'").  *But see Stern*, 2011 WL 2472792, at *20 n.7 ("We noted [in *Granfinanciera*] that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right.'").

At least two overlapping classes of claims fall within the Court's constitutional authority: (1) matters invoking only the Court's *in rem* jurisdiction over the bankruptcy estate; and, (2) disputes over rights created by the Bankruptcy Code as an integral part of the public bankruptcy scheme.  Because exclusive jurisdiction over the debtor's property is one of the "[c]ritical features" of a bankruptcy proceeding, matters invoking only the Bankruptcy Court's *in rem* jurisdiction fall within the public rights exception.  *Katz*, 546 U.S. at 363.  Additionally, under *Thomas*, rights created by the Bankruptcy Code and integral to the public bankruptcy scheme fall within the public rights exception.

Although the extent of *Stern*'s reach is unclear, the Court does not have constitutional authority to enter a final judgment in this case.  This is not a matter invoking only the Court's *in*

*rem* jurisdiction over the bankruptcy estate, nor is it a dispute over rights created by the Bankruptcy Code as an integral part of the public bankruptcy scheme. This is a state law cause of action asserted by a debtor against a creditor. The cause of action neither derives from nor depends upon a regulatory scheme. The cause of action does not stem from the bankruptcy proceedings nor will it necessarily be resolved by the claims allowance process. Entering a final judgment in this case would be the "prototypical exercise of judicial power" and an Article I judge lacks the constitutional authority to do so.

## Analysis

The parties either agree upon or have stipulated to all material facts. The remaining contested issues are questions of law.

FNB argues that: (i) there is no genuine issue of material fact that it complied with all contractual and statutory requirements for conducting the foreclosure sales, and (ii) Texas Property Code § 51.003 does not and cannot provide Trophy Plex with an affirmative cause of action[4] against FNB. (ECF Doc. 22 at 5). Trophy Plex stipulated that "[t]here were no irregularities that occurred in either non-judicial foreclosure sale (other than perhaps the price/market value legal issues alleged by Trophy Plex)." (ECF Doc. 21 at 3). The Court interprets this stipulation as Trophy Plex's admission that there were no procedural irregularities with the second foreclosure sale, but also as an allegation that the second sale foreclosure should never have occurred and therefore was wrongful.

---

[4] Although it is not entirely clear, the Court interprets Trophy Plex's argument slightly differently. The Court does not believe that Trophy Plex is looking to § 51.003 for the affirmative right of recovery. Instead, Trophy Plex seeks to use § 51.003 to have this Court declare, after the fact, that the second non-judicial foreclosure sale should not have occurred because no deficiency remained after the first foreclosure sale. Trophy Plex would then seek to use common law causes of action such as wrongful foreclosure for its affirmative recovery. If the Court is incorrect, and Trophy Plex believes § 51.003 provides it with the right to an affirmative recovery, most of the following analysis remains applicable. The statute's plain language indicates that it does not provide the right to an affirmative recovery.

Trophy Plex argues that the fair market value of the property sold at the first foreclosure sale was greater than FNB's $6,000,000.00 credit bid—indeed that it was greater than the total amount outstanding on the loan at the time, which was $6,891,310.49.   Trophy Plex further argues that, because the fair market value of the property sold at the first foreclosure sale was greater than the total amount owed to FNB, § 51.003 of the Texas Property Code allows this Court to determine that the second non-judicial foreclosure sale should not have occurred.   The text of § 51.003 is as follows:

### § 51.003.  Deficiency Judgment

(a) If the price at which real property is sold at a foreclosure sale under Section 51.002 is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this section.

(b) Any person against whom such a recovery is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale.  The fair market value shall be determined by the finder of fact after the introduction by the parties of competent evidence of value.  Competent evidence of value may include, but is not limited to, the following: (1) expert opinion testimony; (2) comparable sales; (3) anticipated marketing time and holding costs; (4) cost of sale; and (5) the necessity and amount of any discount to be applied to the future sales price or the cash flow generated by the property to arrive at a current fair market value.

(c) If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any claim, indebtedness, or obligation of any kind that is secured by a lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sale price.  If no party requests the determination of fair market value or if such a request is made and no competent evidence of fair market value is introduced, the sale price at the foreclosure sale shall be used to compute the deficiency.

(d) Any money received by a lender from a private mortgage guaranty insurer shall be credited to the account of the borrower prior to the lender bringing an action at law for any deficiency owed by the borrower.  Notwithstanding the foregoing, the credit required by this subsection shall not apply to the exercise by a private mortgage guaranty insurer of its subrogation rights against a borrower or other person liable for any deficiency.

Tex. Prop. Code § 51.003

Section 51.003 does not provide the relief Trophy Plex seeks.  Trophy Plex did not produce any cases, let alone binding precedent, of courts using § 51.003 to determine that a previously held foreclosure sale should not have occurred.  This is presumably because § 51.003's plain language indicates it does not provide such relief.  Unless a statute is ambiguous, Texas statutes should be interpreted according to their plain language.  *Republicbank Dallas v. Interkal*, 691 S.W.2d 605, 607 (Tex. 1985).

Section 51.003's plain meaning allows a person, against whom an action to recover a deficiency is brought, to have the court in which the deficiency action is pending determine the fair market value of property previously sold at a foreclosure sale.  Tex. Prop. Code § 51.003(b).  If it is determined the fair market value was actually greater than the price received, the person is entitled to offset the difference in the pending deficiency action.  Tex. Prop. Code § 51.003(c).  Section 51.003 does not allow this Court to determine after the fact that the second non-judicial foreclosure should not have occurred.  Therefore, Trophy Plex does not have a cause of action for wrongful foreclosure.

The Court expresses no opinion about whether, prior to the second non-judicial foreclosure sale, Trophy Plex would have had the right to a declaratory judgment stating that no amount remained outstanding on the loan because the fair market value of the property sold at the first foreclosure sale exceeded the total amount owed.  The Court simply holds that § 51.003

does not allow a court to declare after the fact that the second non-judicial foreclosure should not have occurred and was therefore wrongful.

### Conclusion

The Court recommends that a final judgment be issued dismissing all claims against First National Bank.

SIGNED **December 1, 2011.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE